UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MORRIS SCOTT,

Plaintiff,

-against-

HOME DEPOT USA INC.; DAN GRACE; ANTHONY FERRIOLI; BRIDGET; CARLOS; ROLANDO; BRANDON GWYNN; JAYMZE,

Defendants.

25-CV-2191 (LLS)

SECOND ORDER OF DISMISSAL

LOUIS L. STANTON, United States District Judge:

Plaintiff, who is proceeding *pro se* and *in forma pauperis* ("IFP"), filed this action against Home Depot and Home Depot employees regarding his employment at a Home Depot store located in Newburgh, New York. By order dated August 21, 2025, the Court granted Plaintiff leave to amend his complaint to address deficiencies in his original pleading because Plaintiff had not provided enough details for the Court to determine what exactly occurred during Plaintiff's employment. The Court's order granting leave to amend directed Plaintiff to comply with Rule 8 of the Federal Rules of Civil Procedure. Plaintiff did not file an amended complaint, and the Court dismissed the complaint on February 26, 2026. The following day, however, Plaintiff filed an amended complaint.

Plaintiff's amended pleading complies with Rule 8, but it does not state any facts suggesting that Defendants violated any of Plaintiff's federal rights. The Court therefore dismisses the action for failure to state a claim.

**STANDARD OF REVIEW**

The Court must dismiss an IFP complaint, or portion thereof, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a

defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted).

## BACKGROUND

The following facts are drawn from the amended complaint.[1] In March or April of 2020, at the Home Depot in Newburgh, New York, Plaintiff asked a night manager named Kyle for permission to work extra hours, and "Kyle said you can." (ECF 10, at 2.) Also during this time period, Plaintiff was seriously injured; he believes the injury was deliberate retaliation for seeking extra hours and reported the incident to a manager named Lynn (*Id.*) In April 2020, after Kyle left for the day, a freight supervisor named Raphael told Plaintiff that he needed to clock out at 11:00 p.m.; when Plaintiff responded that Kyle had approved extra hours, Raphael said he was not supposed to work extra hours. (*Id.*) Plaintiff alleges that several days later, after a manger named Pat asked why Plaintiff was at work, Pat directed Plaintiff to clock out and leave the premises, even though Kyle had approved extra hours. (*Id.*) Kyle later told Plaintiff to work extra hours only when Kyle was on duty. (*Id.*). Lynn later told Plaintiff not to work additional hours, which Plaintiff reported to Kyle. (*Id.*)

---

[1] The Court quotes from the complaint verbatim. All spelling, grammar, and punctuation are as in the original unless noted otherwise.

During this time period, Pat publicly confronted Plaintiff and questioned why he was at work; Pat informed Plaintiff that Plaintiff needed "to help with maintaining, customer social distancing," and directed Plaintiff "to clean under the lumber bays." (*Id.*) Pat later used profane language over the store PA system to tell Plaintiff it was time to leave; Plaintiff reported Pat's behavior to Defendant Dan Grace, a store manager. (*Id.*)

In early 2020, Kyle and Pat accused Plaintiff "of threatening to choke a home depot associate"; Plaintiff "denied these allegations and requested a copy of the complaint," but never received a copy. (*Id.*)

In December 2020 or early January 2021, after Plaintiff complimented the hunting boots owned by a manager named Richard and asked Richard about hunting, Richard stated, "I will hunt you," which Plaintiff reported to Kyle. (Id.)

In November 2021, night manager Anthony told Plaintiff that extra hours were available. (*Id.*)

In late February 2022, while living in his vehicle, Plaintiff fainted in a parking lot, because of his exposure to heat exposure, and experienced bowel and kidney malfunction. After "someone saw his struggle and call[ed] the police . . . later that evening [Plaintiff] was . . . hospitalized. (*Id.* at 3-4.).

In late December 2023, or early January 2024, night manager Anthony informed Plaintiff that he could work extra hours. In early February 2024, however, supervisor Rolando questioned who authorized Plaintiff to work overtime and manager Carlos stated Plaintiff could work only on scheduled days, and Plaintiff should not be concerned with another employee's hours. (*Id.* at 4.) Plaintiff was "concerned about [Carlos] and the other managers prejudice against me and treating me unfairly, by not letting me work those extra hours." (*Id.*) Carlos informed him that

Plaintiff could not work more than 12 hours per week, according to a decision "from the top." (*Id.*)

In April 2024, a coordinator named Bridget initially approved Plaintiff's vacation request but then canceled three of the ten days requested, approving only seven days and depriving Plaintiff of three days of paid vacation. (*Id.* at 5.) Also in April 2024, Plaintiff filed a complaint with the New York State Division of Human Rights. (*Id.*)

In June 2024, Plaintiff asked Dan Grace for additional hours comparable to other freight associates' 30 hours, and Grace approved additional hours from June or July 2024, contingent on the return and approval of night manager Anthony Ferrioli (*Id.* at 6). Manager Brandon Gwynne later offered to help Plaintiff get additional hours, which Plaintiff declined; Brandon and Anthony then gave different accounts of the 30-hour arrangement. (*Id.*).

In late October, or early November 2024, Harriman manager Tony confronted Plaintiff and criticized his performance, a complaint Plaintiff "never received . . . before my EEOC and NYDHR complaint." (*Id.*) On November 25, 2024, while he was writing notes in the breakroom about a recent incident with coordinator Bridget, supervisor Rolando loudly told him the store was closed and to leave; Rolando threatened to lock Plaintiff inside if he did not exit and spoke to him in a hostile manner. (*Id.* at 7.) During this same time period, Plaintiff was pulled from hardware to speak with an HR representative, Mark Abrams, who raised concerns about Plaintiff being disrespectful to Bridget and Rolando; Plaintiff denied being disrespectful, requested copies of statements, and asked why prior complaints he made to managers were not addressed. (*Id.* at 8.) After Plaintiff obtained a five-day schedule, his vehicle was repeatedly vandalized and Harriman manager Tony verbally changed his schedule multiple times. (*Id.* at 8-9.)

Plaintiff alleges that on December 20, 2024, he was terminated by Harriman manager Tony and Newburgh manager Ferrioli for allegedly disrespecting Bridget and Rolando, and that Tony demanded he immediately remove his truck from the premises (*Id.* at 9-10.)

Some time in late 2024, or early 2025, Plaintiff moved his vehicle to a Kohl's parking lot, where it was tagged for towing; after communication with police and towing services, his truck was removed and taken to Walmart's parking lot around January 5, 2025. (*Id.* at 10). Plaintiff alleges that on January 31, 2025, after leaving Walmart's lot and returning mid-afternoon, his vehicle was gone; Walmart personnel determined that it had been towed. (*Id.*)

## DISCUSSION

Plaintiff's claims do not suggest a violation of Plaintiff's rights under any federal antidiscrimination statutes. Mistreatment at work that occurs for a reason other than an employee's protected characteristic or opposition to unlawful conduct is not actionable under these federal antidiscrimination statutes. *See Chukwuka v. City of New York*, 513 F. App'x 34, 36 (2d Cir. 2013) (quoting *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001)).

At the pleading stage in an employment discrimination action, "a plaintiff must plausibly allege that (1) the employer took adverse employment action against him, and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015). The plaintiff "may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Id.* at 87.

Plaintiff's allegations are insufficient to state a plausible claim of discrimination. In the absence of any facts suggesting that Defendants discriminated or retaliated against him based on his protected characteristics—such as his race, color, religion, sex, or national origin—he cannot state a claim under an antidiscrimination statute. The facts alleged rather suggest that Plaintiff

and Defendants disagreed about his work schedule and the number of hours his managers permitted him to work. Although he does state that he was terminated, following years of disputes regarding his schedule, the facts do not include an allegation that this termination was the product of illegal discrimination. The Court therefore dismisses Plaintiff's amended complaint for failure to state a claim on which relief may be granted.

**LEAVE TO AMEND**

District courts generally grant a *pro se* plaintiff leave to amend a complaint to cure its defects, but leave to amend may be denied if the plaintiff has already been given an opportunity to amend but has failed to cure the complaint's deficiencies. *See Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). The Court provided Plaintiff with leave to amend so he could comply with Rule 8 of the Federal Rules of Civil Procedure and describe what occurred during his employment at Home Depot. Plaintiff's amended complaint provides sufficient detail of his employment at Home Deport; it does not, however, include any facts suggesting that Defendants discriminated against him in violation of a federal law. Because the defects in Plaintiff's amended complaint cannot be cured with further amendment, the Court declines to grant Plaintiff another opportunity to amend.

**SUPPLEMENTAL JURISDICTION**

A district court may decline to exercise supplemental jurisdiction of state law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). Having dismissed the federal claims of which the Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction of any state law claims Plaintiff may be asserting. *See Kolari v. New*

*York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).

**CONCLUSION**

Plaintiff's amended complaint, filed *in forma pauperis* under 28 U.S.C. § 1915(a)(1), is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

The Court directs the Clerk of Court to terminate the motion at ECF 13 as frivolous. The Court did not omit the Defendant's motion to dismiss; such a motion was never filed.

The Court directs the Clerk of Court to enter judgment in this action.

SO ORDERED.

Dated: October 5, 2026
New York, New York

Louis L. Stanton

Louis L. Stanton
U.S.D.J.